JMK:WK/CJC:DE/MEB
F. #2018R02275

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| UNITED STATES OF AMERICA | I N F O R M A T I O N |
| - against - | Cr. No. 19-64 (RJD)<br>(T. 18, U.S.C., §§ 981(a)(1), 982(b)(1), |
| RODRIGO GARCIA BERKOWITZ, | 1956(h) and 3551 et seq.; T. 21, U.S.C.,<br>§ 853(p)) |
| Defendant. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

THE UNITED STATES CHARGES:

At all times relevant to this Information, unless otherwise stated:

I.    The Defendant and Relevant Entities

1.    Petróleo Brasileiro S.A. - Petrobras ("Petrobras") was a Brazilian state-owned and state-controlled oil company headquartered in Rio de Janeiro, Brazil, that operated to refine, produce and distribute oil, oil products, gas, biofuels and energy. The Brazilian government directly owned more than 50 percent of Petrobras's common shares with voting rights. Petrobras was controlled by Brazil and performed government functions, and thus was an "agency" and "instrumentality" of a foreign government, as those terms are used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Sections 78dd-2(h) and 78dd-3(f).

2.    Petrobras America Inc. ("PAI") was a wholly-owned subsidiary of Petrobras with its principal place of business in Houston, Texas. PAI was controlled by Brazil and performed government functions, and thus was an "agency" and "instrumentality" of a

foreign government, as those terms are used in the FCPA, Title 15, United States Code, Sections 78dd-2(h) and 78dd-3(f).

3. Trading Company 1, the identity of which is known to the United States, was a subsidiary of a Dutch international energy and commodities trading company incorporated in the United States, with its principal place of business in Houston, Texas. Therefore, at all relevant times, Trading Company 1 was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h).

4. Trading Company 2, the identity of which is known to the United States, was an international energy and commodities trading company incorporated in Singapore, with its principal place of business in Switzerland. At all relevant times, Trading Company 2 was a "person," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-3(f).

5. Trading Company 3, the identity of which is known to the United States, was an oil trading company incorporated in the United States, with its principal place of business in Connecticut. Therefore, at all relevant times, Trading Company 3 was a "domestic concern," as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h).

6. The defendant RODRIGO GARCIA BERKOWITZ was a citizen of Brazil who worked as a trader of fuel oil and related products for Petrobras. BERKOWITZ was seconded to PAI in Houston, Texas from approximately February 2010 to January 2014 and again from approximately August 2017 to December 2018. BERKOWITZ's responsibilities included, among other things, buying feedstock and selling fuel oil to a U.S.-based refinery and selling fuel oil to Puerto Rico. Therefore, BERKOWITZ was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h) and 78dd-3(f).

7. Intermediary 1, an individual whose identity is known to the United States, was a Brazilian national who worked from approximately 2009 to September 2014 at Trading Company 2.

8. Intermediary 2, an individual whose identity is known to the United States, was a Brazilian national who, among other jobs, worked in Brazil and the United States as an agent for a U.S.-based asphalt company. Therefore, Intermediary 2 was an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h).

9. Intermediary 3, an individual whose identity is known to the United States, was a Swedish national who, among other things, worked as an agent for Trading Company 1. Therefore, Intermediary 3 was an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h).

10. Intermediary 4, an individual whose identity is known to the United States, was a Brazilian national who worked in Brazil and the United States as an agent at various times for, among others, Trading Company 3. Therefore, Intermediary 4 was an agent of a "domestic concern" as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h).

11. Foreign Official 1, an individual whose identity is known to the United States, was a manager at Petrobras with responsibility over fuel oil and feedstock trading beginning in or around February 2010. Therefore, Foreign Official 1 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h) and 78dd-3(f).

12. Foreign Official 2, an individual whose identity is known to the United States, was a manager at Petrobras with responsibility over bunker fuel trading. Therefore, Foreign Official 2 was a "foreign official" as that term is used in the FCPA, Title 15, United States Code, Sections 78dd-2(h) and 78dd-3(f).

II. The Bribery and Money Laundering Scheme

13. In or about and between 2010 and 2018, Intermediary 1, Intermediary 2, Intermediary 3, Intermediary 4 and other employees and agents of certain companies involved in the international trading of fuel oil and other commodities, including Trading Company 1, Trading Company 2, Trading Company 3 and other trading companies (collectively, the "Trading Companies"), corruptly offered and paid bribes to foreign officials, including the defendant RODRIGO GARCIA BERKOWITZ, Foreign Official 1, Foreign Official 2 and others (collectively, the "Foreign Officials"), in order to obtain and retain business with Petrobras.

14. In order to promote and conceal the proceeds of the bribery scheme, the defendant RODRIGO GARCIA BERKOWITZ and his co-conspirators, among other things, established shell companies and shell company bank accounts in multiple jurisdictions around the world, including in the United States, Switzerland and Uruguay.

15. In furtherance of the scheme, the defendant RODRIGO GARCIA BERKOWITZ and his co-conspirators, among other things, sent and received confidential information in order to, among other things, help direct Petrobras business to the Trading Companies, and to help determine a price at which the Trading Companies could purchase fuel

that would create a sufficient profit margin for the Trading Companies to pay bribes to the Foreign Officials without arousing suspicion.

16. The defendant RODRIGO GARCIA BERKOWITZ and his co-conspirators caused at least $14.4 million in bribe proceeds to be transferred in association with the scheme.

## CONSPIRACY TO COMMIT MONEY LAUNDERING

17. The allegations contained in paragraphs one through 16 are realleged and incorporated as if fully set forth in this paragraph.

18. In or about and between 2010 and 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant RODRIGO GARCIA BERKOWITZ, together with others, did knowingly and intentionally conspire to transport, transmit and transfer monetary instruments and funds from a place in the United States to or through a place outside the United States and to a place in the United States from or through a place outside the United States:

    a. with the intent to promote the carrying on of one or more specified unlawful activities, to wit: (i) felony violations of the FCPA, in violation of Title 15, United States Code, Sections 78dd-2 and 78dd-3; and (ii) offenses against a foreign nation involving the bribery of a public official, and the misappropriation, theft and embezzlement of public funds by and for the benefit of a public official, in violation of Article 333 of the Brazilian Penal Code, (collectively, the "Specified Unlawful Activities"), contrary to Title 18, United States Code, Section 1956(a)(2)(A); and

b.  knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of some form of unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of one or more specified unlawful activities, to wit: the Specified Unlawful Activities, contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

### CRIMINAL FORFEITURE ALLEGATION

19. The United States hereby gives notice to the defendant that, upon his conviction of the offense charged herein, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

20. If any of the above-described forfeitable property, as a result of any act or omission of the defendant:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

*Richard P. Donoghue*
RICHARD P. DONOGHUE
United States Attorney
Eastern District of New York

ForC  ROBERT ZINK
Acting Chief, Fraud Section
Criminal Division, Dept. of Justice