UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X Docket#
UNITED STATES OF AMERICA,     : 19-cr-00064-RJD-1
                              :
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
JOHN DOE,                     :
            Defendant         : February 8, 2019
------------------------------X
```

**S E A L E D   P R O C E E D I N G**

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE STEVEN M. GOLD
UNITED STATES SENIOR MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


**For the Government:**      **Richard P. Donoghue, Esq.**
                             United States Attorney

                      BY:    **Mark Bini, Esq.**
                             Assistant U.S. Attorney
                             271 Cadman Plaza East
                             Brooklyn, New York  11201

                             **Derek Ettinger, Esq.**
                             **Jonathan Robell, Esq.**
                             United States
                             Department of Justice
                             Criminal Division
                             950 Pennsylvania Ave.
                             Washington, D.C.


**For the Defendant:**       **Kent A. Schaffer, Esq.**
                             **James M. Kennedy, Esq.**
                             Schaffer Carter & Associates
                             712 Main St., Ste. 2400
                             Houston, TX 77002, Esq.


**Transcription Service:**   **Transcriptions Plus II, Inc.**
                             61 Beatrice Avenue
                             West Islip, NY 11795
                             laferrara44@gmail.com


Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for a Plea Hearing,

2    United States v. John Doe, case number 19-cr-64.

3          Counsel, please state your name for the record,

4    beginning with the government.

5          MR. BINI:  Mark Bini for the United States and

6    I am joined by trial attorneys Derek Ettinger and

7    Jonathan Robell from the Department of Justice.

8          THE COURT:  Thank you.

9          MR. BINI:  Good morning, your Honor or good

10   afternoon.

11         THE COURT:  Good afternoon.

12         MR. SCHAFFER:  Good afternoon.

13         I'm Kent Schaffer.  I represent Mr. Berkowitz,

14   along with James Kennedy.

15         MR. KENNEDY:  Good afternoon, your Honor.

16         MR. SCHAFFER:  For Mr. Doe.

17         THE COURT:  Why don't you all have a seat?

18         Let's deal with some preliminary matters.  I

19   have an application from the United States by letter of

20   February 7th and I take it counsel for the defendant has

21   seen that letter?

22         MR. SCHAFFER:  That's correct, your Honor.

23         THE COURT:  And in that letter, I am given

24   reason to substitute John Doe for the defendant's name on

25   the docket sheet and on all filings that are not made

3

Proceedings

1  under seal.  Excuse me.  On any matters that are not

2  filed under seal.  I don't think it's a John Doe docket,

3  right, or is it?

4          MR. BINI:  Your Honor, it was the only publicly

5  filed document that appears is John Doe.

6          THE COURT:  Okay.  Thank you.  You folks don't

7  have to rise unless it's too many years of habit make you

8  do it.

9          First of all, I think there's no objection to

10  that application, is that correct?

11          MR. SCHAFFER:  That's correct, Judge.

12          THE COURT:  And I think that it's adequately

13  supported by the law enforcement interests articulated in

14  the government's application and so I will grant it.

15          The application also asks me to refer to the

16  defendant during these proceeding as John Doe, rather

17  than by his name, if there are individuals in the

18  courtroom other than those involved in the proceeding

19  we're about to undertake.

20          From what I can see, there aren't but I will

21  hear from the government.

22          MR. BINI:  The government agrees, your Honor.

23          THE COURT:  Okay, great.  So in that case, let

24  me understand that the defendant is Rodrigo Garcia

25  Berkowitz and is that the gentleman who is in court

4

Proceedings

1    between his attorneys?

2              MR. SCHAFFER:  Yes, your Honor.

3              MR. KENNEDY:  Yes.

4              THE COURT:  Does your client speak and

5    understand English?

6              MR. SCHAFFER:  Yes, he does, your Honor.

7              THE COURT:  You do, Mr. Berkowitz?

8              THE DEFENDANT:  Yes, I do.

9              THE COURT:  All right.  I've got a lot of paper

10   up here, so please bear with me for just a minute.

11             As I understand it, this is Mr. Berkowitz's

12   first appearance before the Court in connection with this

13   case, is that right?

14             MR. BINI:  Yes, your Honor.

15             THE COURT:  Whenever that's so, there are

16   certain rights I advise a defendant of and so I am going

17   to do that today.

18             Mr. Berkowitz, I understand that you

19   voluntarily presented yourself in court this morning and

20   were not placed under arrest in any physical way but as a

21   legal matter, you are in essence under arrest right now

22   and that you're really not free to leave without a court

23   order permitting you to do so.

24             Because you're under arrest, you have a number

25   of rights.  Those rights include the right to remain

5

Proceedings

1   silent.  You don't have to make any statements about

2   anything.  You don't have to answer any questions and if

3   you were to exercise that right to remain silent, no one

4   could argue to a court or a jury that your silence is

5   evidence of guilt.

6              On the other hand, if you make any statements

7   to anyone other than your lawyers, the prosecution can

8   find out what you've said and attempt to use it as

9   evidence against you in their prosecution of this case.

10             Is that clear to you?

11             THE DEFENDANT:  Yes, your Honor.

12             THE COURT:  You have the right to be defended

13   by attorneys throughout the case.  If you could

14   demonstrate to my satisfaction that you could not afford

15   to retain private attorneys, I would appoint an

16   experienced criminal defense lawyer to defend you at no

17   cost to you.

18             By appearing here with Mr. Schaffer and Mr.

19   Kennedy, you've indicated that you seek to have private

20   counsel appear on your behalf and that you're not

21   applying for court-appointed counsel.

22             Is that accurate?

23             THE DEFENDANT:  Yes, your Honor.

24             THE COURT:  Mr. Schaffer, have you and Mr.

25   Kennedy filed notices of appearance in the matter?

Proceedings

1          MR. SCHAFFER:  Yes, sir, we have.

2          THE COURT:  You are entitled to know what the

3    charge is against you.  The charges set forth in a felony

4    information that the prosecutor will seek leave to file

5    as we go forward with this proceeding and since I will be

6    describing the charges in greater detail as part of the

7    proceeding, I will await a further description of them

8    now.

9          Let me ask you though, have you seen the felony

10   information that the prosecutor wishes to file and

11   reviewed it carefully with your attorneys?

12          THE DEFENDANT:  Yes, your Honor, I did.

13          THE COURT:  Do you understand what it is

14   accusing you of having done?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  Then let's move

17   forward.

18          The reason that you're present today is not

19   only to learn the rights that you're entitled to as a

20   criminal defendant generally, but more specifically,

21   because your attorneys have indicated that you wish to

22   enter a plea of guilty in satisfaction of the charges

23   that might be brought against you, pursuant to a written

24   agreement that you've made with the prosecution, right?

25   And that's what we're about to embark upon is the

7

Proceedings

1    proceeding pursuant to which you'll be offered the

2    opportunity to do that.

3              Are you understanding everything I am saying?

4              THE DEFENDANT:  Yes, your Honor.

5              THE COURT:  All right.  Before I may proceed to

6    hear any guilty plea that you might choose to offer, Mr.

7    Berkowitz, I need to make sure that you understand that I

8    am not the judge who is presiding over your case.  Your

9    case will be presided over by a United States District

10   Judge, Judge Dearie.  Judge Dearie is the one who will

11   decide whether any plea of guilty you offer today should

12   be formally accepted and Judge Dearie is the one who will

13   determine what your sentence should be.

14             I'm a magistrate judge, a different level of

15   judge than Judge Dearie is.  He's a district judge.  As a

16   magistrate judge, I do not have the authority under the

17   law to formally accept the plea of guilty or to decide

18   your sentence.

19             I do, however, have the right, if I have your

20   consent and agreement, to be the judge who listens to

21   your guilty plea.  Now if you were to proceed before

22   Judge Dearie, which is your absolute right, you would be

23   permitted to plead guilty on the same terms and

24   conditions being offered to you today on a different day

25   that's more convenient for Judge Dearie.

8

Proceedings

1              In the alternative, if you agree to allow me to

2    be the judge who listens to your guilty plea, then I will

3    arrange for everything we say to each other to be

4    recorded, and for the recording to be transcribed or

5    written out and that way, Judge Dearie will have a

6    written record of everything you and I have said to each

7    other before he's called upon to decide whether to accept

8    your plea or how to determine your sentence.

9              Do you understand everything I have said?

10             THE DEFENDANT:  Yes, I did, your Honor.

11             THE COURT:  Do you wish to surrender your right

12   to have Judge Dearie hear your plea and do you agree to

13   present your plea to me instead?

14             THE DEFENDANT:  Yes, I do agree, your Honor.

15             THE COURT:  Did you review this consent form

16   carefully with your attorneys and then proceed to sign

17   it?

18             THE DEFENDANT:  Yes, your Honor, I did.

19             THE COURT:  Did you understand what you were

20   signing?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Has anybody forced you or pressured

23   you or threatened you to agree to have me hear your plea

24   instead of Judge Dearie?

25             THE DEFENDANT:  No, your Honor.

9

Proceedings

1          THE COURT:  Counsel, do you know of any reason

2  why your client should not consent to proceed before me

3  for these limited purposes?

4          MR. SCHAFFER:  I do not, your Honor.

5          THE COURT:  I find the consent of the defendant

6  knowing and voluntary.  I am adding my signature and

7  today's date, February 8th, to the consent portion of the

8  referral order form to reflect the finding I have just

9  made.

10          Mr. Berkowitz, before I may recommend to Judge

11  Dearie that his Honor accept any plea of guilty you may

12  offer, I have to ask you a very long list of questions.

13  The questions are important.  They're designed to make

14  sure you understand what a serious decision it is you're

15  about to make and what the consequences of that decision

16  are.

17          Frankly, the questions are also designed to

18  protect the prosecution and the Court because my

19  questions and your answers to them will create a record

20  that will demonstrate that I have explained your rights

21  to you.  You agreed that you understood those rights and

22  then you agreed to surrender or waive those rights.

23          And once that happens, any plea of guilty you

24  make will be legally valid and permanently binding on

25  you.  And so, I think it's important that you listen

10

Proceedings

1   carefully to the questions.  If I ask you anything and

2   you're not sure you understand it, all you have to do is

3   tell me so and I will try to rephrase the question and

4   make it clearer.

5          If you want to stop at any point so that you

6   may have a private conversation with your attorneys or so

7   that you have the opportunity to ask me a question before

8   you answer mine, you may do so.  Just tell me that that's

9   what you want to do.

10          THE DEFENDANT:  Okay.

11          THE COURT:  Are we clear with each other so

12   far?

13          THE DEFENDANT:  Yes, your Honor.

14          THE COURT:  It's also very important that you

15   be completely truthful during this proceeding and to

16   encourage you in that regard, I am going to direct that

17   you be placed under oath before we proceed any further.

18   I want you to stand and raise your right hand.

19   R O D R I G O   G A R C I A   B E R K O W I T Z ,

20      called as a witness, having been first duly sworn,

21      was examined am urging you now to listen carefully to

22      and testified as follows:

23          THE COURT:  Now that you've taken this oath,

24   when you answer my questions, you do so under the

25   penalties of perjury or making a false statement.  Put

11

Proceedings

1  simply, that means that if you lie to me during this

2  proceeding, the prosecutors may bring new criminal

3  charges against you just for that.

4          Are we clear?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Tell me your full name.

7          THE DEFENDANT:  Rodrigo Garcia Berkowitz.

8          THE COURT:  How old are you?

9          THE DEFENDANT:  I'm 39-years-old.

10          THE COURT:  How far did you go in school?

11          THE DEFENDANT:  I have a bachelor in production

12  engineering.

13          THE COURT:  Is English your native language?

14          THE DEFENDANT:  No, Portugese.

15          THE COURT:  Are you having any difficulty

16  understanding me as we communicate in English alone?

17          THE DEFENDANT:  No.

18          THE COURT:  Would you be better assisted if we

19  had a Portugese interpreter here?

20          THE DEFENDANT:  No, I am fine with English,

21  your Honor.

22          THE COURT:  Counsel, have you had any

23  difficulty communicating with your client in the English

24  language?

25          MR. SCHAFFER:  Not at all, your Honor.

Proceedings

1          THE COURT:  Mr. Berkowitz, are you now or have

2   you in recent months been under the care of a doctor,

3   psychologist or other healthcare professional for any

4   mental, emotional or physical problems?

5          THE DEFENDANT:  No, your Honor.

6          THE COURT:  In the last 24 hours, have you

7   taken any narcotics, drugs, medicine, pills or alcohol?

8          THE DEFENDANT:  No, your Honor.

9          THE COURT:  Have you ever in your life been

10  hospitalized or treated for drug or alcohol abuse or

11  mental or emotional problems?

12         THE DEFENDANT:  No, your Honor.

13         THE COURT:  Is your mind clear today?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  Do you feel healthy, focused and

16  alert?

17         THE DEFENDANT:  Yes, your Honor.

18         THE COURT:  Do you understand everything that I

19  have said to you so far?

20         THE DEFENDANT:  Yes, your Honor.

21         THE COURT:  We have already made mention of the

22  felony information that the prosecutor is seeking leave

23  to file in this case.  I would like to turn your

24  attention to that document now, assuming I can find my

25  copy of it.

Proceedings

1          Have you had a chance to see the information

2   that the prosecutor wishes to file and review it with

3   your attorneys?  I know I've already asked you that but

4   that question goes here too.

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  In that information, you are

7   charged with the prosecutor is referring to in shorthand

8   as a conspiracy to commit money laundering.  More

9   specifically, you're charged with participating in a

10  bribery scheme involving Brazilian government officials

11  and the opportunity to make purchases of oil and food

12  stuffs or -- right?

13          MR. BINI:  Feedstocks.

14          MR. SCHAFFER:  Feedstocks.

15          MR. BINI:  I'm sorry, which is a type of oil.

16          THE COURT:  I did not appreciate that

17  particular --

18          MR. BINI:  Sorry.

19          THE COURT:  -- until you just made it clear.

20          MR. BINI:  Yes, your Honor.

21          THE COURT:  Let me start again then.  You are

22  charged with participating in an agreement that involved

23  the bribery of public officials from Brazil and company

24  officials involved in the oil industry that had to do

25  with securing contracts for oil and feedstock.  And

14

Proceedings

1  you're charged with participating in money laundering

2  with respect to that or a conspiracy involving money

3  laundering with respect to that between 2010 and 2018.

4  And by a conspiracy to commit money laundering with

5  respect to it, I think what I am referring to even more

6  specifically is an agreement to work together with other

7  people to transfer and hide the source and ownership of

8  profits generated by the bribery scheme.

9         Do you understand what you're accused of in the

10 felony information that the prosecution wishes to file?

11        THE DEFENDANT:  Yes, your Honor.

12        THE COURT:  Because this -- when I say this is

13 a felony charge, what I mean is that the maximum penalty

14 for being found guilty of it is a period of incarceration

15 that exceeds a year. That's what defines a felony under

16 the federal criminal law.

17        Because it is a felony charge, you have a right

18 under the United States Constitution to have the charge

19 brought only by means of an indictment returned by a

20 properly constituted and charged grand jury.

21        This is not an indictment and it has not been

22 returned by a grand jury.  This is a piece of paper or

23 several pieces of paper signed by a federal prosecutor

24 without any grand jury proceedings having been held at

25 all.

15

Proceedings

1      If you do not waive your right to a grand jury

2  indictment, you cannot under the United States

3  Constitution be charged with a felony like the money

4  laundering conspiracy we just discussed unless and until

5  a grand jury finds by returning an indictment, that they

6  conclude that there is probable cause to believe that you

7  committed this crime.

8      If you do not waive your right to grand jury

9  indictment, the prosecutor may go before the grand jury

10 and present evidence against you and ask the grand jury

11 to return such an indictment.

12     The grand jury would have at least 16 and no

13 more than 23 members and at least 12 of the 16 to 23

14 grand jurors would be required to find that there was

15 probable cause to believe that you committed this offense

16 before you could be indicted for it.  The grand jury

17 might indict you.  The grand jury might not indict you.

18     But if you waive your right to grand jury

19 indictment, you allow the prosecutor to bring the charge

20 against you just with papers prepared in a prosecutor's

21 office without any grand jury proceedings and the case

22 will proceed against you if you waive your right, just as

23 though you had been indicted even though you never were.

24     Do you understand everything I have just told

25 you?

16

Proceedings

1      THE DEFENDANT:  Yes, your Honor.

2      THE COURT:  Have you discussed with your

3  attorneys very carefully whether you should waive your

4  right to grand jury indictment?

5      THE DEFENDANT:  Yes, your Honor.

6      THE COURT:  Is it your preference or your

7  choice to waive your right to grand jury indictment?

8      THE DEFENDANT:  Yes, your Honor.

9      THE COURT:  Did you review this waiver form

10  carefully with your counsel and then agree to sign it?

11      THE DEFENDANT:  Yes, your Honor.

12      THE COURT:  Did anybody pressure you or

13  threaten you or force you to waive grand jury indictment

14  in any way?

15      THE DEFENDANT:  No, your Honor.

16      THE COURT:  Counsel, do you know of any reason

17  why your client should not waive his right to a grand

18  jury indictment?

19      MR. SCHAFFER:  No, sir, I do not.

20      THE COURT:  I find the defendant's waiver of

21  indictment knowing and voluntary and I am adding my

22  signature and printed name and title to any waiver form

23  to reflect that finding.

24      The waiver form appears to be dated February

25  18th.  Today is February 8th.  I'm also correcting that.

17

                              Proceedings

1            MR. BINI:  Thank you, your Honor.

2            Counsel, have you reviewed the matter of

3    pleading guilty carefully with your client?

4            MR. SCHAFFER:  Yes, sir, I have.

5            THE COURT:  Does he understand the rights he

6    will be waiving if he enters a guilty plea?

7            MR. SCHAFFER:  He does, your Honor.

8            THE COURT:  Is he capable of understanding the

9    nature of this proceeding?

10           MR. SCHAFFER:  Yes, sir, he is.

11           THE COURT:  Do you have any doubt about his

12   competence to plead guilty at this time?

13           MR. SCHAFFER:  No, sir, I do not.

14           THE COURT:  Have you alerted your client to,

15   one, the maximum sentence and fine that might be imposed.

16   two, the operation of the sentencing guidelines as best

17   you can predict it, particularly given the terms of his

18   agreement with the prosecution and three, the collateral

19   consequences of conviction including, but not limited to

20   forfeiture and restitution and removal.

21           MR. SCHAFFER:  Yes, I have, your Honor, as to

22   the whole three.

23           THE COURT:  Thank you.

24           Mr. Berkowitz, have you had enough time to go

25   over your case very carefully with your lawyers?

18

Proceedings

1          THE DEFENDANT:  Yes, your Honor.

2          THE COURT:  Are you satisfied to Mr. Schaffer

3   and Mr. Kennedy defending you in this prosecution?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  We have been over the information.

6   Do you have the charge against you in that document clear

7   in your mind?

8          THE DEFENDANT:  Yes, your Honor.

9          THE COURT:  You have a right to plead not

10  guilty to that charge.  You still have that right as you

11  sit here today.  Moreover, you have that right whether

12  you are guilty or not.  Pleading not guilty is never

13  lying or misleading the Court.  Every defendant charged

14  has the right to plead not guilty whether he committed

15  the crime in the charging document or not.  It's the way

16  a defendant exercises his constitutional right to a

17  trial.

18          Are we clear so far?

19          THE DEFENDANT:  Yes, your Honor.

20          THE COURT:  If you were to plead not guilty or

21  persist in any previously entered plea of not guilty -- I

22  don't think that's happened here -- if you were to plead

23  not guilty, then under the Constitution and laws of the

24  United States, you would be entitled to a speedy and

25  public trial by a jury with the assistance of your

19

Proceedings

1   attorneys, not only at the trial but at all stages of the

2   case brought against you, with respect not only to the

3   charges in the information but any additional charges the

4   prosecution might bring.

5          Is that clear to you?

6          THE DEFENDANT:  Yes, your Honor.

7          THE COURT:  At your trial, you would be

8   presumed to be innocent.  The prosecution would be

9   required to overcome the presumption of innocence and to

10  prove that you were guilty by competent evidence and

11  beyond a reasonable doubt.  You would have no obligation

12  to prove that you were innocent.

13         If the prosecution failed to establish your

14  guilt beyond a reasonable doubt, the members of the jury

15  would have the duty acquit you, find you not guilty, and

16  Judge Dearie would them so.

17         Is that clear?

18         THE DEFENDANT:  Yes, your Honor.

19         THE COURT:  That's why sometimes when jurors

20  find a defendant not guilty, it doesn't necessarily mean

21  that the jurors believe that the defendant is innocent.

22  When a jury returns a verdict of not guilty, it only

23  means that the jurors are not convinced beyond a

24  reasonable doubt of the defendant's guilt.

25         I am seeing someone who might be wishing to

Proceedings

1   enter the courtroom but I suppose not.

2          So when a jury returns a not guilty verdict,

3   they're not saying the defendant is innocent necessarily,

4   they're only saying they're not convinced beyond a

5   reasonable doubt of his guilt.

6          Do you understand that difference?

7          THE DEFENDANT:  Yes, I understand.

8          THE COURT:  If you decided to proceed to a

9   trial, the prosecutor's witnesses would be required to

10  come into the courtroom during the trial and to present

11  their testimony against you right in front of you and

12  your attorneys.

13         Your lawyers would have the right to question

14  the prosecution witnesses on cross-examination.  Your

15  lawyers would have the right to object to evidence the

16  prosecution attempted to offer against you and you and

17  your lawyers working together would have the right to

18  call witnesses to testify, and present other types of

19  evidence, whether it's documents, photographs or

20  recordings on your behalf and in your defense during the

21  course of the trial.

22         You could even issue subpoenas, which are like

23  court orders requiring people to come to court and

24  testify if there were witnesses you wished to call in

25  your defense.

Proceedings

1          Do you understand what I have just said?

2          THE DEFENDANT:  Yes, your Honor.

3          THE COURT:  At your trial, you yourself would

4   have the right to testify as a witness in your own

5   defense if you made the choice to do so.  On the other

6   hand, no one could require you to testify at your trial

7   if you preferred not to do so.  That's because the

8   Constitution of the United States provides that no one

9   may be compelled to say anything self-incriminating.  If

10  you made the decision that you did not want to be a

11  witness in your own defense at your trial, Judge Dearie

12  would instruct the members of the jury that they could

13  not take your decision not to testify or your silence

14  into account when they decided what their verdict should

15  be.

16          In other words, the decision to remain silent

17  and the decision not to testify at trial, cannot be held

18  against the defendant by a jury and the judge will

19  instruct the jury in your case of those legal principles.

20          Is that clear to you?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  On the other hand, if you offer a

23  plea of guilty and Judge Dearie accepts it, you will be

24  surrendering your constitutional right to trial, as well

25  as all the other rights I have been describing to you

22

Proceedings

1   today.  There will be no further trial of any kind in

2   your case and you will have no right to appeal from the

3   conviction or guilty judgment that will be entered

4   against you.

5          Judge Dearie will essentially find you guilty

6   and convict you based upon what you say in my courtroom

7   today and that will free the prosecutor of any

8   responsibility to prove what you did.

9          Is that clear to you?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  If you went to trial and you were

12   found guilty by the verdict of a jury, you would have the

13   right to take an appeal and ask a higher court, called

14   the Court of Appeals, to review the legality of all of

15   the proceedings that led up to your conviction.

16          But when you plead guilty, your conviction is

17   based upon the words that you decided to say and under

18   that circumstance, there is no right to appeal from the

19   conviction that follows.

20          Do you follow that?

21          THE DEFENDANT:  Yes, I did, your Honor.

22          THE COURT:  If you wish to enter a plea of

23   guilty, I am going to ask you questions about what you

24   did in violation of the money laundering statute.  I'm

25   going to ask those questions so that Judge Dearie and I

23

Proceedings

1  can be satisfied that your plea of guilty is based on

2  events that really took place.

3          You don't have to answer those questions unless

4  you want to go forward with your guilty plea.  If you do

5  answer the questions and you admit your involvement in

6  criminal activity, you'll be surrendering your

7  constitutional right not to say anything that is self-

8  incriminating.

9          Have I made myself clear?

10         THE DEFENDANT:  Yes, your Honor.

11         THE COURT:  Do you still want to give up your

12  right to trial and all the other rights I've been telling

13  you about today?

14         THE DEFENDANT:  Yes, your Honor.

15         THE COURT:  I've been told that you're making

16  this decision pursuant to the terms of a written

17  agreement you have entered into with the prosecution.

18  That agreement which is 12 pages long and bears today's

19  date appears to have signatures on the last page and has

20  been marked as Government Exhibit 1.

21         I am going to ask my clerk to hand your lawyer

22  that exhibit, so you can look at it with me.

23         Mr. Berkowitz, the original Court Exhibit 1 is

24  now before you.  Do you recognize this document?

25         THE DEFENDANT:  Yes, your Honor.

24

Proceedings

1          THE COURT:  Turning your attention to the final

2     page, does your signature appear above the typewritten

3     line with your name?

4          THE DEFENDANT:  Yes,

5          THE COURT:  Before you signed it, did you read

6     it?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Did you go over it with your

9     attorney carefully?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  Did you understand what you signed?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  Do you have any questions about

14     your agreement that you would like to ask me or discuss

15     privately with your attorneys before we go forward?

16          THE DEFENDANT:  No, your Honor.

17          THE COURT:  Is everything in it clear?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Does that written agreement contain

20     a complete and accurate statement of everything you and

21     the prosecution have agreed to concerning this case?

22          THE DEFENDANT:  Sorry, your Honor, can you

23     repeat please?

24          THE COURT:  I certainly can.  Does the written

25     agreement that's in front of you and marked as Government

25

Proceedings

1  Exhibit 1 --

2          THE DEFENDANT:  Uh-hum.

3          THE COURT:  -- does that document set out in

4  writing completely and accurately, everything that you

5  and the prosecution have agreed to about how your case

6  will proceed?

7          THE DEFENDANT:  Yes, your Honor.

8          THE COURT:  Has anyone promised you anything in

9  return for pleading guilty that isn't written down in

10 that agreement?

11         THE DEFENDANT:  No, your Honor.

12         THE COURT:  You may return the document to the

13 Court, please, counsel.

14         I need to go review with you at this stage, the

15 penalties you face if you decide to go forward with your

16 guilty plea.

17         Do you have the charge against you, the money

18 laundering conspiracy clear in your mind?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  The law you are accused of

21 breaking, that money laundering conspiracy, authorizes

22 Judge Dearie to impose a prison sentence of as long as 20

23 years.

24         Is that clear to you?

25         THE DEFENDANT:  Yes, your Honor.

Proceedings

1          THE COURT:  It also authorizes Judge Dearie to

2  impose a term of supervised release as long as three

3  years.

4          Is that clear to you?

5          THE DEFENDANT:  Yes, your Honor.

6          THE COURT:  Supervised release is a period of

7  time, in your case it could be up to three years, it's a

8  period of time that doesn't even begin until you've

9  finished serving whatever prison sentence is imposed in

10  your case.

11         Once you've finished serving that prison

12  sentence, you will be released from prison but you

13  wouldn't be completely free because you'll be subject to

14  the rules and regulations of supervised release.

15         A defendant permitted to remain in the United

16  States has to follow a long list of rules while on

17  supervised release.  Those rules include but are not

18  limited to reporting requirements, requirements that the

19  defendant answer his probation officer's questions and

20  follow his probation officer's instructions carefully.

21         And whether a defendant remains in the United

22  States or not, it is a condition of supervised release

23  that the defendant commit no new crimes whatsoever.

24         Are you following me so far?

25         THE DEFENDANT:  Yes, your Honor.

27

Proceedings

1          THE COURT: If you were to violate the terms of

2     your supervised release, whether in doing so you've

3     committed a new crime or not, you could be arrested,

4     brought back to this Court, and sentenced to a new prison

5     term of up to two years on the money laundering

6     conspiracy charge for violating the conditions of your

7     supervised release.  You would get no credit against the

8     new two-year sentence for the time you spent serving your

9     original prison sentence or the time you spent with your

10    freedoms limited by the rules of supervised release.

11          Are you still following me?

12          THE DEFENDANT:  Yes, your Honor.

13          THE COURT:  You could be fined the greater of

14    $500,000 or twice the value of the funds involved in the

15    money laundering transactions that are described in the

16    felony information.

17          Do you understand that?

18          THE DEFENDANT:  Yes, your Honor.

19          THE COURT:  You will be required to make

20    restitution or pay back the proceeds of criminal activity

21    as determined by the Court.  That will be separate and

22    apart from any fine.

23          Do you understand that?

24          THE DEFENDANT:  Yes, your Honor.

25          THE COURT:  You will be required to make a

Proceedings

1  criminal forfeiture or surrender funds of $2.3 million

2  and cooperate with the United States and its government

3  and the prosecution in its effort to find and cease those

4  monies.

5        Do you understand that?

6        THE DEFENDANT:  Yes, your Honor.

7        THE COURT:  You are subject to deportation or

8  removal from the United States based upon your guilty

9  plea in this matter.  And anything you say in my

10 courtroom today can be used against you if there were

11 ever proceedings held to determine your right to remain

12 in or ever return to the United States.

13       Is that clear to you?

14       THE DEFENDANT:  Yes, your Honor.

15       THE COURT:  You, like every other defendant

16 convicted of a federal felony, will be required to make a

17 $100 special assessment payment at or about the time

18 you're sentenced in this case.

19       Do you understand that?

20       THE DEFENDANT:  Yes, your Honor.

21       THE COURT:  I think then it's time to discuss

22 what we call the Sentencing Commission Guidelines.  Have

23 you had a chance to talk to your lawyers about these

24 guidelines and your agreement and how the guidelines in

25 the agreement interact and how they're likely to affect

29

Proceedings

1   the sentence you may receive from Judge Dearie?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  Has the government reached an

4   estimate of the guideline range that they expect Judge

5   Dearie will calculate in this case?

6           MR. BINI:  Yes, your Honor.  The government

7   estimates that the guidelines will be a base level of 8

8   under 2(s)(1.2), plus 20 for more than 9.5 million in

9   laundered funds -- that's 2(s)(1.2) and

10  2(b)(1.1)(B)(1)(k).  A two point enhancement under

11  2(s)(1.1)(B)(2)(b) for --

12          THE COURT:  For -- I'm sorry.

13          MR. BINI:  Oh, is that a four point

14  enhancement?

15          THE COURT:  No, no, no, I meant f-o-r, I

16  thought you were moving onto your next point without

17  explaining what that last two point enhancement was.

18          MR. BINI:  Oh, I'm sorry, your Honor.

19          THE COURT:  My fault.

20          MR. BINI:  And that enhancement is for a

21  conviction under 18 USC 1956.

22          Also, the government believes a two point

23  enhancement under 2(s)(1.1)(B)(3) for sophisticated money

24  laundering would be assessed here, giving a total offense

25  level of 32, which not taking into account acceptance of

30

Proceedings

1  responsibility, would call for a sentencing range of 121

2  to 151 months.

3          THE COURT:  Did you hear and understand what

4  the -- I doubt you fully understood all of the technical

5  references to the sentencing guidelines but did you hear

6  and understand that the prosecutor, based upon his

7  application of these very technical guidelines to the

8  facts and circumstances of your case, estimates that

9  Judge Dearie will calculate a guideline range of 121

10  to --

11          MR. BINI:  151 months before the acceptance of

12  responsibility.

13          THE COURT:  Do you understand that that's the

14  government's estimate?

15          THE DEFENDANT:  Yes, I understand, your Honor.

16          THE COURT:  Now the final decision while I am

17  sure the government's estimate was made carefully, the

18  final decision about your guideline range will be made by

19  Judge Dearie and Judge Dearie won't calculate your

20  guideline range until he receives something called a

21  presentence report.  The report hasn't been written yet

22  but when it has been, you and you're your lawyers and the

23  prosecutor will all be permitted to read the report.

24          There will then be a hearing before Judge

25  Dearie at which you will have the opportunity to speak

31

Proceedings

1   and your lawyers will have the opportunity to speak on

2   your behalf.  At that time, if there's anything in the

3   report that you think is inaccurate or unfair, you or

4   your lawyers can tell Judge Dearie about it.

5            And only after hearing from you and the

6   prosecutors will Judge Dearie decide what the guideline

7   range in your case should be.  It is possible that Judge

8   Dearie will calculate an even longer guideline range than

9   the prosecutor has estimated.

10           Do you understand me?

11           THE DEFENDANT:  Yeah, I understand, your Honor.

12           THE COURT:  Even after the judge calculates the

13  guidelines, his Honor is not required to impose a

14  sentence within the guideline range he calculates.  The

15  guidelines are what we call advisory.  They will suggest

16  to the judge what an appropriate sentence should be but

17  the judge will look at an even fuller range of fact and

18  circumstances about you and your criminal conduct, than

19  the guidelines take into account and he will have the

20  authority to impose a sentence longer or shorter than the

21  guideline range he calculates.

22           Do you understand that?

23           THE DEFENDANT:  Yes, your Honor.

24           THE COURT:  Your agreement with the prosecution

25  suggests the possibility that the prosecutors will ask

32

Proceedings

1  the Court to impose a sentence below the guideline range

2  but it doesn't guarantee you that the prosecutors will

3  make that request of Judge Dearie.  Whether they do so or

4  not, depends upon things that haven't even happened yet.

5              Do you understand?

6              THE DEFENDANT:  Yes, I understand, your Honor.

7              THE COURT:  Even if the prosecutors make the

8  request of Judge Dearie, Judge Dearie is not obligated to

9  grant their request.  So even, in other words, if you

10  satisfy the prosecutors that you're entitled to a

11  downward departure, Judge Dearie will have to be

12  independently persuaded before you're granted one.

13              Do you understand that?

14              THE DEFENDANT:  I understand, your Honor.

15              THE COURT:  Pursuant to the terms of your

16  agreement, if you receive a term of imprisonment of 121

17  months or less, no matter how Judge Dearie calculates

18  that prison sentence, you will have no right to challenge

19  any aspect of your conviction or sentence or plea.

20              Even if you are sentenced to incarceration for

21  longer than 121 months, you will not be permitted to

22  withdraw your guilty plea or challenge the judgment of

23  guilt that was entered against you as a result of it on

24  that basis.

25              The only right you would have if you're

33

Proceedings

1   sentenced to prison for more than ten years and a month,

2   would be to challenge the length of your prison term.

3          Do you understand me?

4          THE DEFENDANT:  Yes, I understand, your Honor.

5          THE COURT:  Have I gotten all the penalties and

6   guidelines out on the table in a way that the prosecution

7   thinks is accurate?

8          MR. BINI:  Yes, your Honor.

9          THE COURT:  You may have heard of parole.

10  Parole is a program of early release from prison

11  sentence.  Parole is a state court program.  It is, and

12  hasn't been, for many years, a federal court possibility.

13  So whatever prison term you receive from Judge Dearie,

14  you will not be released early from it on parole.

15         Is that clear to you?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Do you have any questions you would

18  like to ask me or discuss privately with your attorneys

19  about the rights you have and are being asked to waive,

20  the charge against you, the terms of your agreement, the

21  penalties confronting you or anything else?

22         THE DEFENDANT:  No, your Honor.

23         THE COURT:  Is everything I have told you today

24  clear to you?

25         THE DEFENDANT:  Yes, your Honor.

34

Proceedings

1          THE COURT:  Are you ready to enter a plea of

2    guilty to the information?

3          THE DEFENDANT:  Yes, I am, your Honor.

4          THE COURT:  Counsel, do you know of any reason

5    why your client should not enter the plea of guilty to

6    the information contemplated by your client's agreement

7    with the government?

8          MR. SCHAFFER: No, I do not, your Honor.

9          THE COURT:  Mr. Berkowitz, with respect to the

10   charge of conspiracy to commit money laundering as

11   further detailed in felony information 19-cr-64, how do

12   you plead; guilty or not guilty?

13         THE DEFENDANT:  Guilty.

14         THE COURT:  Do you make this plea of guilty

15   voluntarily and of your own free will?

16         THE DEFENDANT:  Yes, your Honor.

17         THE COURT:  Have you been threatened or forced

18   by anyone to enter a guilty plea?

19         THE DEFENDANT:  No, your Honor.

20         THE COURT:  Other than what's written down in

21   your plea agreement with the government, has anyone

22   promised you anything in return for pleading guilty?

23         THE DEFENDANT:  No, your Honor.

24         THE COURT:  Other than to describe to you the

25   range of sentences permitted under law, has anyone told

Proceedings

1    you or promised you what sentence Judge Dearie will

2    impose in your case?

3             THE DEFENDANT:  No, your Honor.

4             THE COURT:  Tell me what happened and what you

5    did that makes you guilty.  And before you do, I can't

6    help noticing that you are about to read from a prepared

7    statement, which is perfectly fine, provided I give you

8    my little remark about it.

9             I am imagining or speculating, I should say,

10   that your attorneys helped prepare the statement you're

11   about to read.  That's perfectly appropriate.  Part of a

12   lawyer's responsibility in circumstances like these is to

13   help a defendant find the right word with which to

14   express himself.

15            But the responsibility for the truthfulness and

16   the accuracy of what you're about to say is yours, not

17   your lawyers, and the fact that they help you what you're

18   about to read to the Court, doesn't give you an excuse to

19   blame them if it isn't truthful.  What you tell me must

20   be the truth as you recall it, not simply what you were

21   told to say by an attorney.

22            Do you understand what I have said?

23            THE DEFENDANT:  Yes, your Honor.

24            THE COURT:  Now you can tell me either in your

25   own words or in words your lawyer helped you find, what

Proceedings

1    you did that makes you guilty of this crime.

2            THE DEFENDANT:  In or about and between 2010

3    and 2018, employees and agents of certain companies

4    involved in the international trading of fuel oil and

5    other commodities --

6            THE COURT:  In the -- I'm sorry, in the

7    international trading of?

8            THE DEFENDANT:  Fuel oil.

9            THE COURT:  Fuel oil.  I'm sorry.

10           THE DEFENDANT:  Fuel oil and other commodities,

11   corruptly offered and paid bribes to foreign officials,

12   including myself in order to obtain and retain business

13   with Petrobras, the Brazilian state-owned oil company in

14   which I worked and had worked for years.

15           In order to promote and conceal the proceeds of

16   the bribery screen -- scheme, myself and my co-

17   conspirators established shell companies and shell bank

18   accounts around the world, including Switzerland and

19   Uruguay.

20           During this time period, myself and my co-

21   conspirators knowingly -- knowingly and internationally

22   (sic) conspired to transfer these proceeds from a place

23   inside of the United States, ultimately to a place

24   outside of United States.

25           This was sometimes done via wire transfer,

Proceedings

1    through United States banks, and in United States dollars

2    to a bank account that my father set up for my benefit

3    with my authorization in Uruguay.

4              I knew that the proceeds I was receiving were

5    from the unlawful activity of bribery. Further, the

6    creating of shell companies and shell bank accounts was

7    done to conceal and disguise the funds.

8              THE COURT:  You said -- I think you misspoke

9    one word while you were speaking.

10             THE DEFENDANT:  Maybe.

11             THE COURT:  When you said that you knowingly

12   and internationally conspired --

13             THE DEFENDANT:  Intentionally, sorry.

14             THE COURT:  Do you --

15             THE DEFENDANT:  My mistake.

16             THE COURT:  Do you know what the word

17   intentionally means?

18             THE DEFENDANT:  Yes, I know what intentionally

19   is.  Yes.

20             THE COURT:  And did you intend to say

21   intentionally --

22             THE DEFENDANT:  Yes.

23             THE COURT:  -- instead of internationally?

24             THE DEFENDANT:  Exactly.

25             THE COURT:  All right.  Let me go over this

38

Proceedings

1   with you just a little bit.

2           THE DEFENDANT:  Okay.

3           THE COURT:  You were an official of the

4   government of Brazil and had responsibilities in

5   connection with Petrobras, a Brazilian government-run oil

6   company.

7           Is that correct?

8           THE DEFENDANT:  That's correct.

9           THE COURT:  And during the time you held that

10  capacity you and others working for Petrobras that you

11  knew about, took bribes from private companies that

12  wanted to get favorable terms on oil contracts with

13  Petrobras.

14          Is that accurate?

15          THE DEFENDANT:  That's accurate.

16          THE COURT:  And then you tried to hide the

17  bribe money by placing it in offshore accounts so that it

18  wouldn't be readily traced to you.

19          Is that correct?

20          THE DEFENDANT:  That is correct, your Honor.

21          THE COURT:  You did this between 2010 and 2018?

22          THE DEFENDANT:  Yes, that's correct.

23          THE COURT:  And you did it together with other

24  people who were accepting bribes who also worked at

25  Petrobras and had official capacities in the Brazilian

Proceedings

1   government and in the oil business.

2           THE DEFENDANT:  Yes, that's correct.

3           THE COURT:  You knew all of this was going on

4   and why the monies were being put in these offshore

5   accounts was to hide its true source and ownership?

6           THE DEFENDANT:  Yes, your Honor, I knew that.

7           THE COURT:  What would the government's proof

8   of venue be?

9           MR. BINI:  Your Honor, if this case were to

10  proceed to trial, the government would prove that the

11  bribe payments moved through United States accounts and

12  through United States corresponding accounts, including

13  several accounts in New York City, passing through the

14  Eastern District of New York.

15          And the government would also note that the

16  defendant has agreed to waive venue as part of his

17  agreement with the government and plead guilty here in

18  the Eastern District of New York in the first paragraph

19  of his agreement.

20          THE COURT:  Mr. Schaffer, are those

21  representations consistent with your understanding?

22          MR. SCHAFFER:  Yes, your Honor.

23          THE COURT:  Thank you.  Have I left anything

24  out of the allocution that the government can think of?

25          MR. BINI:  No, your Honor.  The only other

Proceedings

1  thing I would say is it's -- I think, you know, certainly

2  implied in the colloquy that you had was that not only

3  were the transactions done to conceal the bribe payments

4  but also to promote and further the bribery scheme.

5          THE COURT:  And how exactly would that be?

6          MR. BINI:  So in other words, in their -- under

7  the money laundering information charges him both with

8  concealment money laundering but promotional money

9  laundering in that the funds were moved into these

10  accounts, such as the Uruguayan account for the

11  defendant, in order to continue the bribery and to

12  continue the scheme, so that they would award the

13  Petrobras business as part of the scheme.

14          THE COURT:  I'm still not sure I am

15  understanding the theory under which the concealment of

16  the proceeds is in furtherance of the ongoing nature of

17  the scheme, except insofar as it prevented discovery of

18  the scheme, so that its perpetrators could continue it.

19  Is that what you're trying to say or something different?

20          MR. BINI:  Well, no, I'm saying it does promote

21  the scheme because with -- under 1956(a)(2)(A), and the -

22  - or 1956, the international money laundering statute,

23  there is no --

24          THE COURT:  Someone is coming in.

25          MR. BINI:  -- Santos issue.  So the payment, a

41

Proceedings

1  bribe payment that moved would also count as promotional

2  money laundering is what I am trying to say.

3         That said -- now that I've said it, your Honor,

4  I withdraw it because I think the statements make that

5  out and I'm making a legal distinction.

6         THE COURT:  All right.  That's fine.  One thing

7  I did want to ask you and I will take your representation

8  and I infer it from the information, it's just not

9  something I knew before, under the Foreign Corrupt

10 Practices Act predicates --

11        MR. BINI:  Yes, your Honor.

12        THE COURT:  -- what connection -- I understand

13 that it can be a bribery of a foreign official, but are

14 you representing that the companies that paid the bribes

15 were based in the United States and that's why it's

16 covered by the FCPA?

17        MR. BINI:  Some of them are based in the United

18 States or had subsidiaries in the United States but in

19 addition to, the defendant himself was present in the

20 United States for much of the scheme and was based --

21        THE COURT:  And that's where I get my question

22 from.  So a foreign company paying a foreign government

23 official who is in the United States at the time he

24 receives the payment, satisfies the elements of the

25 Foreign Corrupt Practices Act, even though there's no

42

Proceedings

1   United States person or entity involved in the corrupt

2   arrangement.

3            MR. BINI:  Well here there but it would under

4   both DD2 in this case, 15 USC 78 DD2 and 15 USC 78 DD3

5   and I am going to turn to my colleague (indiscernible)

6   that section but the one relates to actually being

7   present in the United States and that's DD2?

8            UNIDENTIFIED SPEAKER:  DD3.

9            MR. BINI:  DD3, okay.  And DD2 relates to

10  domestic persons and so the defendant would qualify under

11  both of those -- and his co-conspirators, some of them,

12  with respect to the state-owned company would, as well,

13  if that answers your Honor's question.

14           THE COURT:  It does.  It's quite edifying.

15  Does defense counsel have any dispute with the

16  government's representation of the statute?

17           MR. SCHAFFER:  We do not dispute that, your

18  Honor.

19           THE COURT:  Okay.  It's an application of the

20  statute that doesn't come across my desk with enough

21  frequency for me to be intuitively familiar with it, so I

22  appreciate your bringing it out.

23           MR. BINI:  Your Honor, one other thing I would

24  add is just as my colleague said, noted to me, which is I

25  would ask or would state that if the case were to go to

43

Proceedings

1  trial, the government would also prove that others were

2  involved in the conspiracy besides the government

3  officials, as the defendant also provided in his

4  allocution with respect to fuel oil companies that were

5  not government officials. So it included both, government

6  officials, the fuel oil companies and certain

7  intermediaries who were conspirators.

8          THE COURT:  Is that accurate, Mr. Berkowitz?

9          THE DEFENDANT:  Yes, it is.

10          THE COURT:  Is the government satisfied with

11  the record?

12          MR. BINI:  Yes, your Honor.

13          THE COURT:  Is there anything defense counsel

14  wants me to review or add?

15          MR. SCHAFFER:  Nothing, your Honor.

16          THE COURT:  Based on the information given to

17  me, I find that the defendant Rodrigo Garcia Berkowitz is

18  acting voluntarily, that he fully understands his rights

19  and the consequences of his plea and that his plea has a

20  factual basis.  I therefore respectfully recommend that

21  United States District Judge Dearie accept the

22  defendant's plea of guilty to felony information's sole

23  count.

24          I had a Post-It here with a sentencing date

25  that Judge Dearie was proposing and that is September

44

Proceedings

1   13th, at 10 a.m.

2           Mr. Berkowitz, between now and when you are

3   sentenced, you will be interviewed by a probation

4   officer.  The reason for the interview will be to help

5   the officer prepare that report I was telling you about

6   earlier that Judge Dearie will rely upon when he decides

7   what your sentence should be.  It's therefore quite

8   important that you be cooperative and candid during that

9   interview.

10          Do you understand what I have said?

11          THE DEFENDANT:  Yes, I do.

12          THE COURT:  Great.  I think we have two more

13  things to address, one being the question of pretrial

14  release and one being a reminder to the defendant that he

15  needs to be processed by the marshal before he is at

16  liberty to leave.  And then --

17          MR. BINI:  Yes, your Honor.  With respect to

18  bail conditions or release conditions, if applicable

19  here, I've spoken to defense counsel and the parties

20  would ask for a $500,000 signature bond signed by the

21  defendant, with the defendant's travel restricted to the

22  Eastern District of New York, the Southern District of

23  New York, Washington, D.C. --

24          THE COURT:  Hang on.  Hang on.

25          MR. BINI:  Oh, I'm sorry.

45

Proceedings

1           THE COURT:  EDNY, SDNY --

2           MR. BINI:  Washington, D.C.

3           THE COURT:  -- D.C. --

4           MR. BINI:  And the State of Texas.

5           THE COURT:  -- and Texas and travel in between

6   I take it.

7           MR. BINI:  Yes, your Honor.

8           THE COURT:  Are there any other conditions?

9           MR. BINI:  The surrender of any travel

10  documents --

11          THE COURT:  To pretrial?

12          MR. BINI:  Yes, your Honor.

13          THE COURT:  How long will it take you to do

14  that, Mr. Schaffer?

15          MR. SCHAFFER:  We have them now, your Honor.

16  We're going to tender right after court.

17          THE COURT:  Okay, so I am going to put by

18  today.

19          Are you seeking reporting requirements?

20          MR. BINI:  We would not at this time, your

21  Honor.

22          THE COURT:  So there are no other conditions,

23  other than the travel and the surrender of the passports?

24          MR. BINI:  Yes, your Honor.

25          THE COURT:  Would it be more convenient if the

46

Proceedings

1  surrender was at the pretrial offices?

2          PRETRIAL SERVICES OFFICER:  We'll meet with the

3  defendant after court today, your Honor.  We would ask,

4  if possible, for random home visits, if --

5          MR. BINI:  No objection.

6          PRETRIAL SERVICES OFFICER:  And report as

7  directed, if we need him to come into the office, just so

8  we have the authority to do that on pretrial and --

9          THE COURT:  Where is he going to be living?

10          MR. SCHAFFER:  In Houston.

11          THE DEFENDANT:  Houston.

12          THE COURT:  In Houston, Texas?  So you would

13  have to get a courtesy visit, I suppose.

14          PRETRIAL SERVICES OFFICER:  Correct.

15          THE COURT:  Do you wish to be heard in

16  opposition?

17          MR. BINI:  No, we're fine with that, your

18  Honor.

19          THE COURT:  All right.  You'll report as

20  directed and random visits at home and work.  If you feel

21  it's -- you need more, you can apply obviously through

22  the United States Attorney's Office or directly and if

23  you feel it's too much, you can tell me so and we'll

24  reconsider.

25          THE DEFENDANT:  Thank you.

47

Proceedings

1          THE COURT:  All right.  Anything else?

2          MR. BINI:  Not from the government, your Honor.

3          THE COURT:  All right.  Mr. Berkowitz, at the

4   government's urging, and despite the gravity of the

5   offense and your ties to a foreign country -- well,

6   actually there is one question I did want to ask.

7   According to the pretrial report, the defendant's status

8   in the United States is now somewhat ambiguous.

9          More specifically, I believe he came here on a

10  visa that has expired.  Can the government tell me

11  anything about what the status of its efforts to allow

12  him to continue to remain here unlawfully are and whether

13  he'll be able to get any work while he is here, et

14  cetera?

15         MR. BINI:  The FBI has submitted a deferred

16  action request and they're working in order to do that

17  for -- so that -- to hopefully resolve those issues.

18         With respect to work, that I can't say other

19  than I noted that he's has been working as an Uber driver

20  in the pretrial services report.  Certainly, that's very

21  important.

22         THE COURT:  Well, I certainly don't want you

23  to, on the one hand, be a party to this release order and

24  on the other hand, contend that his work as an Uber

25  driver is the work of an undocumented individual that's

48

Proceedings

1    illegal and he should be charged with violating the terms

2    of his bail conditions.

3            MR. BINI:  No.

4            THE COURT:  You know, we have to have a clear

5    understanding of what will constitute a violation of

6    these conditions or not and if your position is that with

7    an expired visa, he shouldn't be working, I'll hear that

8    argument.  I just don't want him whipsawed by any

9    ambiguity here.

10           MR. BINI:  I understand your Honor's point and

11   certainly the reason why the FBI has submitted that

12   deferred action request in this case is because we're

13   hoping to work with the defendant and for that reason, we

14   also agree with your Honor that we would not be seeking

15   to take adverse action against him based upon his

16   immigration status because we would want to be able to

17   cooperate with him.

18           THE COURT:  All right.  Mr. Berkowitz, at the

19   government's urging, I am going to release you on this

20   $500,000 bond. I want you to understand that your travel

21   will be restricted as we just dictated.  Pretrial

22   services officers may come to your home.  You need to

23   make them feel as comfortable as you can there and if

24   they tell you to report, you need to report.  It's not a

25   get out of jail free card by any means.

49

Proceedings

1          If you don't come back to court and follow
2    these rules, you'll owe the United States government
3    $500,000.  By the way, while you're out on bail, you may
4    not commit any new crimes.  If you commit a new crime
5    while you're out on bail, it's grounds to revoke your
6    bail and impose a harsher penalty for the new offense
7    because you were on bail when it was committed.

8          If you don't follow the rules, you'll not only
9    owe the United States government $500,000, but a warrant
10   will issue for your arrest for failing to appear.  They
11   will find you and bring you back here and I anticipate
12   that you won't be released on bond a second time.

13         You could also be charged with the separate
14   crime of bail jumping.  All the prosecution has to prove
15   to establish bail jumping is that you were ordered to be
16   here, and you're not.  Once they prove that, you'll be
17   convicted of bail jumping and any bail jumping conviction
18   requires a prison sentence that is consecutive to, not
19   concurrent with whatever sentence you receive on the
20   charge to which you just pled guilty.

21         Is all of that clear?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  There's a line for the defendant to
24   sign.  I put a little X there for him to sign the bond.

25         I'm going to ask the government to stay behind

Proceedings

1   to help me sift through all this paperwork which I've

2   discombobulated in the course of this proceeding.

3            MR. BINI:  Thank you, your Honor.

4            THE COURT:  Thank you.

5   (Pause)

6            THE COURT:  All right.  The bond appears to be

7   in order.  I think I am done with the exception of

8   directing the defendant to proceed to the marshal's

9   service and to pretrial to surrender the passports at

10  pretrial and provide any pedigree information necessary

11  and then the marshal's for fingerprinting and processing.

12           I am going to allow -- I am going to take the

13  court copy off.  I have a copy of the bond for defense

14  counsel.  Will the marshals need the original?  No, they

15  would need the detention order, not the bond.

16           MR. BINI:  No, I think as long as they have a

17  copy that's sufficient, your Honor.

18           THE COURT:  Okay.  And I have pretrial's here.

19           MR. BINI:  Your Honor, the government would

20  also request sealing of the transcript of the proceedings

21  today for the same reasons set out in the government's

22  letter of February 7, 2019, with a copy available without

23  further order of the Court to both defense counsel and

24  the government.

25           THE COURT:  Any objection?

51

Proceedings

1          MR. SCHAFFER:  None, your Honor.

2          THE COURT:  Sealing is so order.

3          MR. BINI:  Thank you, your Honor.

4          THE COURT:  In addition, the prosecution may

5  distribute any minutes pursuant to Brady and its progeny

6  and 3500 of Title 18 without further application to the

7  Court but with the courtesy of giving counsel for Mr.

8  Berkowitz advance notice that that is going to happen.

9  All right?

10          MR. BINI:  Thank you, your Honor.

11          MR. KENNEDY:  Your Honor, and if I may, kind of

12  on that note, when we file documents, like applications

13  to appear pro hac or a notice of appearance, it has all

14  been John Doe.  The information and cooperation agreement

15  sealed.

16          Like I noticed today, the waiver of indictment

17  had his name but didn't say sealed on it, as opposed to a

18  John Doe.  And the Court had inquired whether or not this

19  was a John Doe docket, meaning I guess anything and

20  everything filed is automatically sealed or if we have to

21  specifically ask for it or if everything should be titled

22  as a United States v. John Doe and like the waiver of

23  indictment, it clearly states the name.  I had a little

24  bit of confusion about that.

25          THE COURT:  So do I, actually but if that's an

52

Proceedings

1   application that the waiver of indictment form be filed

2   under seal, I will grant it.

3          MR. KENNEDY:  Fair enough.

4          MR. BINI:  Yes, your Honor, I would join that.

5   I thought it went in with the information itself.

6          THE COURT:  Yeah.  It's in a -- oh, I see, the

7   envelop you gave me was --

8          MR. BINI:  I think so.

9          THE COURT:  -- for the waiver and the

10  information.

11         MR. BINI:  I think so because you can't have

12  the information without the waiver.

13         THE COURT:  Right.  Okay.  So why don't we, if

14  we're finished with the record, we'll go off and we'll

15  figure out the paperwork now.  Okay?

16         MR. BINI:  Thank you, your Honor.

17         THE COURT:  Okay.

18              (Matter concluded)

19                   -o0o-

20

21

22

23

24

25

53

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **14th** day of **February**, 2019.

*Linda Ferrara*
Linda Ferrara

AAERT CET 656
Transcriptions Plus II, Inc.